Tomas Latham - ADC#152032
_____
Name and Prisoner/Booking Number

A.S.P.C. - Eyman - Cook unit -
_____
Place of Confinement

7 D 05 Lower - P.O. Box 3200
_____
Mailing Address

Florence, Arizona 85132
_____
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

☒ FILED    ☐ LODGED

# Oct 02 2023

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Tomas Latham ,
_____
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Naphcare Incorporated ,
_____
(Full Name of Defendant)

(2) Grace Adams ,
_____

(3) _____ ,

(4) _____ ,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-23-2060-PHX-GMS (DMF)
_____
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A.  JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
     ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
     ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
     ☐ Other: _____.

2.  Institution/city where violation occurred: A.S.P.C.-Eyman; Florence, Arizona .

**550/555**

## B. DEFENDANTS

1. Name of first Defendant: _Naphcare Incorporated_. The first Defendant is employed
as: _Contracted healthcare provider_ at _A.D.C.R.R._.
(Position and Title)                                    (Institution)

2. Name of second Defendant: _Grace Adams_. The second Defendant is employed as:
as: _Nurse Practitioner_ at _A.S.P.C. - Eyman Complex_.
(Position and Title)                                    (Institution)

3. Name of third Defendant: _____. The third Defendant is employed
as: _____ at _____.
(Position and Title)                                    (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed
as: _____ at _____.
(Position and Title)                                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☐ Yes    ☒ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

    a. First prior lawsuit:
        1. Parties: _____ v. _____
        2. Court and case number: _____.
        3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
        _____.

    b. Second prior lawsuit:
        1. Parties: _____ v. _____
        2. Court and case number: _____.
        3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
        _____.

    c. Third prior lawsuit:
        1. Parties: _____ v. _____
        2. Court and case number: _____.
        3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
        _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: _Violation of the 8th Amendment to the United States Constitution - Defendant Naphcare Incorporated_

2. **Count I.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   _Tomas Latham (herein "Plaintiff") is a prisoner at A.S.P.C.-Eyman-Cook Unit in Florence, Arizona and alleges that Defendant Naphcare Incorporated is currently deliberately indifferent to the Plaintiff's serious medical needs in maintaining policies and practices that prevent the Plaintiff from receiving prompt and proper treatment for his diagnosis of Renal Carcinoma. The Plaintiff states the following facts:_

   _On April 22nd, 2023, the Plaintiff was arrested by Pinal County Sheriff's deputies and was taken to Banner Casa Grande Medical Center for examination of injuries sustained during an officer assault. After receiving care for the injuries sustained from this assault, a CT scan was performed and it was discovered that the Plaintiff had "debris on his right kidney probably cancer." The Plaintiff was then taken to Pinal County jail and booked on various charges. At intake, the Plaintiff reported his diagnosis to the intake nurse and two (2) weeks after booking, the Plaintiff was taken to a Radiologist for an M.R.I. of his abdomen. The M.R.I. confirmed the existence of an 18mm tumor on the Plaintiff's right kidney. (Next Page)→_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   _Constant and severe abdominal pain on a level of 4 to 6 - based on a scale of 1 to 10, loss of appetite, difficulty keeping down food, nausea, vomiting, and inadequate treatment of Renal Carcinoma._

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

On May 24th, 2023, the Plaintiff was transferred to A.D.C.R.R. Custody and transported to A.S.P.C.- Phoenix-Alhambra unit for intake. At his intake medical exam, Plaintiff reported his diagnosis and symptoms to the intake physician at which time the provider expressed serious concern over the Plaintiff's explanation and two(2) days later the same provider stated that after contacting central office and receiving emergency approval, the Plaintiff would be seen by a Nephrologist (Kidney specialist) for an emergency consultation approximately one week after reaching his assigned housing unit. On June 1st, 2023, Plaintiff was transferred to A.S.P.C.- Eyman - Cook Unit in Florence, Arizona and began submitting Health Needs Requests (H.N.R.'s) daily but was not seen by a triage nurse or health care provider. On June 5th, 2023, the Plaintiff was transferred to Geo Kingman - Huachuca unit in Kingman, Arizona. Once at this unit, the Plaintiff once again began to submit H.N.R.'s on a daily basis and was triaged by six(6) different nurses, stating the same symptoms each time but was never seen by a provider even after being told that he would be scheduled to see one.

Then on June 19th, 2023, the Plaintiff was once again moved; this time back to A.S.P.C.-Eyman - Cook Unit. Upon arrival, the Plaintiff was seen by the Assistant Director of Nursing Nuric. AD.O.N. Nuric stated that the Plaintiff had a medical hold due to his diagnosis and should not have been transferred to Kingman. Plaintiff was then told that he had an upcoming nephrology appointment. On June 26th, 2023, Correctional officer Sergeant Urbick activated an I.C.S. (Incident Command System) for a "man down" due to the Plaintiff

reporting severe abdominal pain, projectile vomitting, and after an examination by medical staff, Plaintiff had a blood pressure of 200/142. The Plaintiff was then transported to Florence Anthem Medical Center in Florence, Arizona. After an exam, the attending physician's diagnosis was appendicitis. The Plaintiff then stated that he had his appendix removed in 1991. The physician explained that "even though he had his appendix removed, it can grow back and it looks like a hot dog." The Plaintiff was very confused by this explanation as it did not make sense. The attending physician then finished his exam and the Plaintiff was taken back to prison. Later that night, Correctional officers activated a second I.C.S. due to the Plaintiff reporting severe abdominal pain. The onsite nurse noted a blood pressure of 188/135 and contacted Defendant Grace Adams for further instruction. Defendant Adams then stated that "[H]e (Tomas Latham) is fine and both Latham and the officers are lying about his condition." The Plaintiff was then returned to his bunk without further examination or treatment.

The Plaintiff continued to submit H.N.R.'s and was seen seven (7) days later by Defendant Adams. After reviewing his records and listening to the Plaintiff's explanation of his diagnosis and worsening symptoms, Defendant Adams stated that her diagnosis was acute appendicitis. The Plaintiff told her that her diagnosis was incorrect and then shaved her his appendectomy scar. She then stated "[Y]ou don't have cancer, stop making it up. You don't have any pain either." Defendant Adams then refused to provide the Plaintiff

with any care or relief and requested that the Plaintiff leave her office.

On July 3rd, 2023, the Plaintiff was seen by Nurse Practitioner Ortiz via a video telemed appointment. N.P. Ortiz confirmed the existence of two (2) tumors on the Plaintiff's right kidney and that due to the serious nature of his diagnosis, he would be scheduling specialist appointments with a radiologist, oncologist, and a cardiologist and confirmed that the Plaintiff had a future appointment with a nephrologist. N.P. Ortiz also stated that he would label the specialist appointments as urgent in order to fast-track the appointments.

On July 28th, 2023, the Plaintiff was seen by Dr. Tripp and once again stated his symptoms and diagnosis. Dr. Tripp then performed an examination of the Plaintiff and noted his worsening condition. The Plaintiff then asked Dr. Tripp about his nephrologist appointment. Dr. Tripp then stated that his appointment was scheduled for July 11th, 2023 and the Plaintiff's records showed that the original appointment was cancelled and that the Plaintiff was not transported. The Plaintiff then further explained that he has worsening abdominal pain and was losing weight.

On August 15th, 2023, the Plaintiff was transported to a Nephrologist appointment with Dr. Masood. After reviewing the Plaintiff's medical records, previous M.R.I. and CT scan findings, and listening to the Plaintiff's explanation of his condition, Dr. Masood stated

that the Plaintiff did in fact have two (2) tumors; one malignant tumor and one benign tumor. He also stated that the Plaintiff has a serious form of Cancer and while the Plaintiff will be fine if he receives proper treatment and surgery, a failure to receive prompt treatment will most likely result in the Plaintiff's death. When Plaintiff asked if his diagnosis is terminal, Dr. Masood repeated his warning and stated that he was recommending an urgent Urologist appointment and surgery to remove the cancerous tumors A.S.A.P.

Two weeks later, the Plaintiff was seen by N.P. Johnson after submitting more H.N.R.'s and initiating the grievance process. The Plaintiff once again explained the situation and the conversation with Dr. Masood and N.P. Johnson agreed with both the prognosis and seriousness of the situation. N.P. Johnson stated that she would submit an additional request for an urgent appointment with a Urologist. The Plaintiff was also given a copy of the specialist's notes submitted by Dr. Masood on August 15th, 2023. The consultation notes confirm Dr. Masood's findings and also reflects a Naphcare Incorporated policy, stating the following:

"For security reasons inmates must NOT be informed of recommended follow up dates and/or times. All recommended tests and treatments are subject to Vendor Utilization management approval."

Since the Plaintiff's last provider appointment, he has been seen for daily blood pressure checks and weekly weight checks. Plaintiff continues

3-D

to suffer from rapid weight fluctuation, loss of appetite, fatigue and severe abdominal pain in which he is now being given 1000mg of Tylenol three(3) times per day and Toridol injections weekly. On September 13th, 2023, Plaintiff was transported to a specialist appointment with a radiologist to review the Plaintiff's previous M.R.I., CT scan, and other previous treatment and to explain possible treatment and other diagnostic testing. Upon initial review, Dr. Huang stated and confirmed the existence of a tumor on the inside wall of the Plaintiff's right Kidney. The doctor then proceeded to explain that he wanted to do two(2) procedures; a biopsy and then a freeze of the tumor and surrounding area in an attempt to disintegrate all traces of cancerous tissue. Dr. Huang then reviewed the risks and benefits of the procedures and stated that he would submit a request for the procedures to occur approximately four(4) weeks later. As of todays date, September 30th, 2023, the Plaintiff has not been scheduled for the biopsy procedure with the radiologist but has been told by medical staff they are "trying to schedule it."

Under 42 U.S.C. 1983, a prisoner-plaintiff alleging a violation of his constitutional rights to medical care under the 8th Amendment against a prison health care provider, the Plaintiff must satisfy the following elements: (1) That the Plaintiff contends that the municipality or private corporation maintains an official policy or custom related to the Plaintiff's injury, (2) an explanation of how such policy or custom caused the Plaintiff's injury, (3) that the employees of the private corporation were acting pursuant to the alleged policy or custom, and (4) that such policy or custom resulted in a non-deminimus injury to

3-E

the Plaintiff.

The Plaintiff alleges that Defendant Naphcare Incorporated is the contracted company that provides health care services to prisoners in A.D.C.R.R. custody and act under the color of State law by providing such services. The Plaintiff alleges that the following policy and accepted practice is causing ongoing serious physical pain and preventing him from receiving treatment for his Renal Carcinoma:

(1) That Defendant Naphcare Incorporated maintains a policy that overrides provider and specialist recommendations and orders to delay or cancel care to the Plaintiff.

(2) That Defendant Naphcare Incorporated maintains, encourages, and facilitates an accepted practice of nursing staff and health care providers failing to schedule medically necessary specialist appointments and treatments due to cost or complexity.

From his intake at A.S.P.C. Phoenix-Alhambra unit until this action, the Plaintiff has seen numerous nurses and providers that have provided him with a variety of promises of specialist appointments, treatments and other care. However, as reflected on the form provided by Dr. Tripp, every recommendation is to be approved by a separate entity. This policy and entity has significantly delayed the Plaintiff's care and provides a systematic process of overriding provider orders as Defendant Naphcare Incorporated sees fit, as seen by the length of time it took for the Plaintiff to see a Kidney specialist and

Why the Plaintiff has received no treatment despite numerous entries and requests made by health care providers. This policy therefore delays or outright denies life-saving care and is actively causing serious injury to the Plaintiff.

The Plaintiff also alleges that Defendant Naphcare Incorporated maintains, encourages, and facilitates an accepted practice of its nursing staff and health care providers failing to schedule specialist appointments and treatments. As stated previously, the Plaintiff was seen a total of thirteen (13) times and at each of those appointments, was told that he would be seen or scheduled for a specialist visit in the near future in regard to appointments with five (5) different specialists; a radiologist, nephrologist, oncologist, urologist, and cardiologist, only two (2) of which he has actually seen. This pattern of failing to schedule and ensure transport to vitally important specialists is causing continual injury as the Plaintiff's condition continues to worsen.

As stated previously and throughout this cause of action, all health care workers the Plaintiff has seen work under and adhere to Defendant Naphcare Incorporated policies and practices. On each occasion, a Naphcare policy was in effect that the employee the Plaintiff was seen by was required to follow, causing further injury to the Plaintiff as time as elapsed since his original explanation of his diagnosis to the intake provider.

The previously stated policy and accepted practice have

Caused significant physical injury to the Plaintiff. Since receiving his diagnosis, the Plaintiff has received no care except a diagnostic specialist appointment and a generalized plan for a biopsy procedure that is to occur in the near future. From April to current, the Plaintiff has repeatedly requested treatment and the official policy and practice has delayed care, causing severe pain and an overall worsening of his condition and possible metastasis of his cancer.

The most recent specialist appointment was on September 29th, 2023 - after the Plaintiff had wrote most of this complaint - and he was transported to an offsite nephrologist appointment. At that appointment, the provider acted upset that nothing had been done to eradicate the Plaintiff's Renal Carcinoma. The provider even went so far that she wrote "[URGENT]! Renal biopsy" on the Plaintiff's paperwork in front of him where he could clearly see it. Once arriving back to the unit, Plaintiff had an appointment with Dr. Tripp and was sick and vomitting during that meeting. Dr. Tripp ordered nausea medicine and a 60mg Toridol shot for pain. The doctor made sure to tell the Plaintiff that he had both a kidney stone and a growth that is most likely cancer and not a cyst due to its growth rate and increasing pain level. Dr. Tripp stated he would put in an order for the Plaintiff to have a Toridol shot whenever necessary for pain.

## COUNT II

1. State the constitutional or other federal civil right that was violated: *Violation of the 8th Amendment to the United States Constitution - Defendant Grace Adams*.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☒ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Tomas Latham (herein "Plaintiff") reaffirms and alleges all facts previously stated in Count I and includes a summary of those facts for this count. Plaintiff is a prisoner at A.S.P.C.-Eyman-Cook unit in Florence, Arizona and alleges that Defendant Grace Adams - a nurse practitioner previously posted at Cook unit - was deliberately indifferent to the Plaintiff's serious medical needs. Defendant Grace Adams chose to both ignore prior testing and information in the Plaintiff's medical file and ignored the Plaintiff's explanation of his symptoms. The Defendant's actions directly resulted in the Plaintiff not receiving adequate and reasonable medical care and delayed any needed scheduling for proper treatment of the Plaintiff's diagnosis of Renal Carcinoma. The Plaintiff states the following facts:

   On April 22nd, 2023, the Plaintiff was arrested by Pinal County Sheriff's deputies and was taken to Banner Casa Grande Medical Center for examination of injuries sustained during an officer assault. After receiving care for the injuries sustained from this assault, a CT scan was performed and it was discovered that the Plaintiff had "debris on his right kidney probably cancer." The Plaintiff was then taken to Pinal County jail and booked on various charges. (Next Page) →

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Constant and severe abdominal pain on a level of 4 to 6 based on a scale of 1 to 10, loss of appetite, difficulty keeping down food, nausea, vomitting, and inadequate treatment of Renal Carcinoma.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count II?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

At intake, the Plaintiff reported his diagnosis to the intake nurse and two (2) weeks after booking, the Plaintiff was taken to a Radiologist for an M.R.I. of his abdomen. The M.R.I. confirmed the existence of an 18mm tumor on the Plaintiff's right kidney.

On May 24th, 2023, the Plaintiff was transferred to A.D.C.R.R. custody and transported to A.S.P.C.-Phoenix-Alhambra unit for intake. At his intake medical exam, Plaintiff reported his diagnosis and symptoms to the intake physician at which time the provider expressed serious concern over the Plaintiff's explanation and two (2) days later the same provider stated that after contacting central office and receiving emergency approval, the Plaintiff would be seen by a Nephrologist (Kidney Specialist) for an emergency consultation approximately one week after reaching his assigned housing unit. On June 1st, 2023, the Plaintiff was transferred to A.S.P.C.-Eyman-Cook Unit in Florence, Arizona and began submitting Health Needs Requests (H.N.R.'s) daily but was not seen by a triage nurse or health care provider. On June 5th, 2023, the Plaintiff was transferred to Geo Kingman-Huachuca Unit in Kingman, Arizona. Once at this unit, the Plaintiff once again began to submit H.N.R.'s on a daily basis and was triaged by six (6) different nurses, stating the same symptoms each time but was never seen by a provider even after being told that he would be scheduled to see one.

Then on June 19th, 2023, the Plaintiff was once again moved; this time back to A.S.P.C.-Eyman-Cook unit. Upon arrival, the Plaintiff was seen by Assistant Director of Nursing Nuric. A.D.O.N. Nuric stated that the Plaintiff had a medical hold due to his diagnosis and should not

have been transferred to Kingman. Plaintiff was then told that he had an upcoming nephrology appointment. On June 26th, 2023, Correctional officer Sergeant Urbick activated an I.C.S. (Incident Command System) for a "man down" due to the Plaintiff reporting severe abdominal pain, projectile vomiting, and – after an examination by medical staff – the Plaintiff having a blood pressure of 200/142. The Plaintiff was then transported to Florence Anthem Medical Center in Florence, Arizona. After an exam, the attending physician's diagnosis was appendicitis. The Plaintiff then stated that he had his appendix removed in 1991. The physician explained that "even though he had his appendix removed, it can grow back and it looks like a hot dog." The Plaintiff was very confused by this explanation as it did not make sense. The attending physician then finished his exam and the Plaintiff was taken back to prison. Later that night, Correctional officers activated a second I.C.S. due to the Plaintiff again reporting severe abdominal pain. The onsite nurse noted a blood pressure of 188/135 and contacted Defendant Grace Adams for further instruction. Defendant Adams then stated that (while on speaker phone with the nurse and Plaintiff in the room) "[H]e (Tomas Latham) is fine and both Latham and the officers are lying about his condition." The Plaintiff was then returned to his bunk without further examination or treatment.

The Plaintiff continued to submit H.N.R.'s and was seen seven (7) days later by Defendant Grace Adams. After reviewing his records and listening to the Plaintiff's explanation of his diagnoses and worsening symptoms, Defendant Adams stated that

4-B

her diagnosis was acute appendicitis. The Plaintiff told her that her diagnosis was incorrect and then showed her his appendectomy scar. Defendant Adams then stated "[Y]ou don't have cancer, stop making it up. You don't have any pain either." Defendant Adams then refused to provide the Plaintiff with any care or relief and requested that the Plaintiff leave her office.

Under 42 U.S.C. 1983, a prisoner-plaintiff alleging a violation of his constitutional rights to medical care under the 8th Amendment against a prison doctor or provider, the Plaintiff must satisfy the following elements: (1) Existence of a serious medical need, (2) the provider failed to reasonably respond to such need, (3) the provider's actions directly resulted in non-de minimis injury. Defendant Grace Adams actions resulted in injury to the Plaintiff and a significant delay in his treatment. Plaintiff has been trying to receive treatment since April of 2023, which at this point is more than five (5) months. Due to the Defendant's actions, the Plaintiff has been forced to live in worsening pain and his condition has become significantly worse. This disease is life threatening and the Plaintiff will not survive his short prison sentence without adequate medical treatment.

**COUNT III**

1.    State the constitutional or other federal civil right that was violated: _____
_____.

2.    **Count III.**   Identify the issue involved.   Check **only one**.   State additional issues in separate counts.
    ☐ Basic necessities      ☐ Mail      ☐ Access to the court    ☐ Medical care
    ☐ Disciplinary proceedings    ☐ Property    ☐ Exercise of religion   ☐ Retaliation
    ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.

3.    **Supporting Facts.**   State as briefly as possible the FACTS supporting Count III.   Describe exactly what **each Defendant** did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

4.    **Injury.**   State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____

5.    **Administrative Remedies.**
    a.    Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?    ☐ Yes    ☐ No
    b.    Did you submit a request for administrative relief on Count III?    ☐ Yes    ☐ No
    c.    Did you appeal your request for relief on Count III to the highest level?    ☐ Yes    ☐ No
    d.    If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
_____.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

Seeking compensatory damages from Defendant Naphcare Incorporated in the amount of $1,000,000.00. Seeking compensatory damages from Defendant Grace Adams in the amount of $500,000.00. Seeking punitive damages from Defendant Naphcare Incorporated in the amount of $3,000,000.00. Seeking punitive damages from Defendant Grace Adams in the amount of $1,000,000.00. Seeking further declaratory relief, permanent injunctive relief, and all other relief the court deems necessary.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   10/02/2023
                    DATE                                         SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.